IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| DOMINICK MARTINO, | |
| Plaintiff, | |
| v. | HONORABLE JEROME B. SIMANDLE |
| COUNTY OF CAMDEN, M. O'DONNELL, PETE LONGO, MATTHEW WOSHNAK, CITY OF CAMDEN, PATRICIA PRADO, STATE OF NEW JERSEY, MICHAEL KANE, | Civil No.  04-5300 (JBS) |
| | **OPINION** |
| Defendants. | |

APPEARANCES:

Rocco Cipparone, Jr., Esq.
LAW OFFICE OF ROCCO C. CIPPARONE, JR.
203-205 Black Horse Pike
Haddon Heights, NJ 08035
     Attorney for Plaintiff

M. Lou Garty
Camden County Counsel
     By: Howard L. Goldberg
          Assistant County Counsel
520 Market St., 14th Floor Courthouse
Camden, NJ 08102
     Attorney for Defendants County of Camden and M. O'Donnell

Daniel A. Tabs, Esq.
David Cassidy, Esq.
FLORIO & PERRUCCI, L.L.C
235 Frost Ave.
Phillipsburg, NJ 08865
     Attorneys for Defendants Matthew Woshnak and Pete Longo

Lewis Wilson
City Attorney
     By: Mark V. Maguire
          Assistant City Attorney
City of Camden, Office of City Attorney
City Hall, 4th Floor, Suite 419
P.O. Box 95120
Camden, NJ 08101
     Attorney for Defendants City of Camden and Patricia Prado in
     Her Official Capacity

Ralph Raymond Kramer, Esq.
605 White Horse Pike
Haddon Heights, NJ 08035
     Attorney for Defendant Patricia Prado in Her Individual
     Capacity

Peter Harvey
Attorney General of New Jersey
     By: Randall B. Weaver, D.A.G.
Office of the Attorney General
Department of Law and Public Safety, Division of Law
25 Market Street, P.O. Box 112
Trenton, NJ 08625
     Attorney for Defendants State of New Jersey and Michael Kane

**Simandle**, District Judge:

I.   <u>Introduction</u>

     This matter comes before the Court upon the motions of

Defendants City of Camden and Patricia Prado in her official

capacity, and State of New Jersey and Michael Kane, to dismiss

Plaintiff's claims pursuant to Fed. R. Civ. P. 12(b)(6).[1]

---

     [1] Defendants Longo and Woshnak, represented by private
counsel, seek to join the State and City's motions, but also
reargues those claims under the guise of a Rule 12(c) motion on
the pleadings.  Since, however, Rule 12(c) motions are to be made
at the close of pleadings it is not an appropriate motion at this
time.  Therefore, Longo and Woshnak's Rule 12(c) motion will be
treated as a Rule 12(b)(6) motion to dismiss for failure to state
a claim.

Defendants County of Camden and M. O'Donnell, as well as Defendants Pete Longo, and Matthew Woshnak, have made motions to join the City of Camden and the State's motions.  For the reasons expressed below, the motions of the individual Defendants to join in the City of Camden's and State of New Jersey's motions will be granted, and the State of New Jersey and City of Camden's motions will be granted in part and denied in part.

II.  <u>Background</u>

    A.  <u>Factual Allegations</u>

According to the Complaint, on the night of October 30, 2002 Plaintiff Dominick Martino was arrested in Camden and charged and jailed for eluding police officers (N.J.S.A 2C:29-2b) and loitering for the purpose of obtaining controlled substances (N.J.S.A. 2C:33-2.1).  (Compl. at ¶103.)  Additionally, Plaintiff Martino was issued summonses for various traffic violations.[2] (<u>Id.</u> at ¶105.)  Following his arrest, he was brought to Camden County Jail where he remained overnight until being released on $16,000 bail the next day.

The events leading up to this arrest are as follows: at or around 10:30PM on October 30, 2002, Plaintiff, while on his way home from a community college class, became lost in a high-crime

---

[2] These violations include failure to stop at a stop sign; driving the wrong way on a one-way street; failure to wear a seatbelt; careless driving/driving on the sidewalk; and failure to exhibit documents (drivers license).

neighborhood of Camden, a neighborhood known to police for drug activity. (Compl. at ¶33.)  Three undercover police officers (Defendants State Trooper Michael Kane, Camden County Sheriff M. O'Donnell, and Matthew Woshnak, who was working for the Camden County Prosecutor's office) were patrolling that neighborhood in an unmarked Mercury S.U.V. (Id. at ¶42.)  While at the corner of 7th and York Streets Plaintiff's car caught the attention of the undercover officers, who decided to follow him, suspecting him of purchasing narcotics. (Id. at ¶43.)  Soon afterwards, a second unmarked police van, containing Patricia Prado, a City of Camden police officer, and Pete Longo, working for the Camden County Prosecutor's Office, joined in following Plaintiff Martino. (Id. at ¶79.)

In his Complaint, Plaintiff Martino says he drove from block to block, trying to find his way back to the highway, not realizing that the cars trailing him were the police. (Id. at ¶47.)  Martino alleges he was scared, not only because of the neighborhood, but because he was being followed by these unknown, suspicious looking cars. (Id. at ¶89.)  When the police tried to pull him over, Plaintiff Martino, fearing for his safety, drove off. (Id. at ¶¶78-84.)  Eventually the Defendants stopped Plaintiff Martino, searched him and his car, and though the search revealed nothing illegal, (Compl. at ¶98,) arrested him. (Id. at ¶104.)  Martino was brought to the Camden Police

Administration Building, where Defendant Longo, pursuant to his position in the Camden County Prosecutor's office, issued an arrest warrant, claiming Martino was a "danger to self and community" and therefore should remain in custody.  (<u>Id.</u> at ¶104.)

Martino maintains that at no time prior to his arrest did he have any verbal or physical contact with any bystanders nor did he do anything else that would constitute suspicious behavior. (<u>Id.</u> at ¶¶50-51.)  Furthermore, Plaintiff asserts that at no time prior to his arrest did the police identify themselves.  (<u>Id.</u> at ¶82.)  Martino admits that he committed traffic violations, but maintains he did so with "just cause and necessity."  (<u>Id.</u> at ¶41.)  This Court assumes the Plaintiff's use of "just cause and necessity" suggests that the traffic violations were justifiably committed while escaping from the unmarked cars following him.

The Defendants present a slightly different account of that evening's events.  They claim that they "observed plaintiff engage in conduct that they believed was consistent with that of an individual attempting to purchase drugs," though they offer no specifics.  (City's Brief at 1.)  The Defendants also assert that they tried repeatedly to pull over Plaintiff Martino, that Plaintiff ignored the police, and that in the process of eluding them, Plaintiff violated numerous traffic laws.  (<u>Id.</u> at 1.)  For

5

the purposes of a Rule 12(b)(6) dismissal motion, unaccompanied by affidavits, this version is disregarded.

Plaintiff was found not guilty in Camden City Municipal Court for loitering to obtain controlled substances and various traffic violations, and was found guilty for resisting arrest and other traffic violations. (<u>Id.</u> at ¶144.)  Plaintiff appealed the guilty verdicts and on October 17, 2003 was found not guilty of the remaining charges; on October 8, 2004 his arrest and all associated charges were expunged from his record. (<u>Id.</u> at ¶¶146-48.)

    B.  <u>The Allegations of Plaintiff's Complaint</u>

Plaintiff Martino is suing the State of New Jersey ("State"), the City of Camden ("City"), the County of Camden ("County"), as well as Michael Kane ("Kane"), Pete Longo ("Longo"), Michael Woshnak ("Woshnak"), M. O'Donnell ("O'Donnell"), and Patricia Prado ("Prado"), in their individual and official capacities, in addition to various unnamed individuals and agencies.  Martino brings his suit under 42 U.S.C. § 1983, claiming his constitutional rights were violated by defendant agencies and individuals, and is also making various state law claims.  Specifically, Plaintiff Martino's Complaint sets forth twelve separate claims.  Count One is a § 1983 claim for false imprisonment against all Defendants except the State, claiming that the time between his arrest and the issuance of a

warrant violated the Fourth Amendment's guarantee of freedom from illegal searches and seizures. (<u>Id.</u> at ¶¶157-161.) Count Two alleges malicious prosecution under § 1983 against all Defendants but the State, based on Martino's imprisonment pursuant to the arrest warrant issued by Longo. (<u>Id.</u> at ¶¶162-66.) Count Three alleges an unlawful/unreasonable search against all Defendants but the State, based on the searches of Plaintiff's body and car, as well as having his blood drawn. (<u>Id.</u> at ¶¶167-171.) Count Four alleges an unconstitutional invasion of privacy and deprivation of substantive due process rights under § 1983 against all Defendants but the State, based on the same searches and blood work. (<u>Id.</u> at ¶¶172-76.) Count Five alleges denial of equal protection under § 1983 against all Defendants but the State, claiming Defendants engaged in racial profiling, pursuing and arresting Martino solely because he is white. (<u>Id.</u> at ¶¶177-180.) Count Six alleges conspiracy under 42 U.S.C. § 1985 against all Defendants but the State, claiming the Defendants conspired to pursue, arrest, and prosecute Plaintiff based on his race. (<u>Id.</u> at ¶¶181-87.) Count Seven alleges failure to prevent conspiracy under 42 U.S.C. § 1986 against all Defendants but the State. (<u>Id.</u> at ¶¶188-190.) Count Eight alleges under § 1983 that the City and County of Camden, as a matter of custom and practice failed to adequately train their employees, resulting in the above mentioned constitutional violations. (<u>Id.</u> at ¶¶191-

95.)  Counts Nine through Twelve, made against all Defendants,
are state law claims for malicious prosecution, intentional
infliction of emotional distress, negligent infliction of
emotional distress, and negligent failure to properly train law
enforcement officers.  (Id. at ¶¶196-210.)

III. Discussion

    A.   Standard of Review

A Rule 12(b)(6) motion to dismiss for failure to state a
claim upon which relief may be granted must be denied "unless it
appears beyond doubt that the plaintiff can prove no set of facts
in support of his claim which would entitle him to relief."
Scheuer v. Rhodes, 416 U.S. 232, 236 (1974).  A district court
must accept any and all reasonable inferences derived from those
facts.  Unger v. Nat'l Residents Corp. v. Exxon Co., U.S.A., 761
F. Supp. 1100, 1107 (D.N.J. 1991); Gutman v. Howard Sav. Bank,
748 F. Supp. 254, 260 (D.N.J. 1990).  Further, the court must
view all allegations in the Complaint in the light most favorable
to the plaintiff.  See Scheuer, 416 U.S. at 236; Jordan v. Fox,
Rothschild, O'Brien & Frankel, 20 F.3d 1250, 1261 (3d Cir. 1994).

It is not necessary for the plaintiff to plead evidence, and
it is not necessary to plead the facts that serve as the basis
for the claim.  Bogosian v. Gulf Oil Corp., 561 F.2d 434, 446 (3d
Cir. 1977); In re Midlantic Corp. Shareholder Litigation, 758 F.
Supp. 226, 230 (D.N.J. 1990).  The question before the court is

not whether plaintiffs will ultimately prevail; rather, it is whether they can prove any set of facts in support of their claims that would entitle them to relief.  Hishon v. King & Spalding, 467 U.S. 69, 73 (1984).  Therefore, in deciding a motion to dismiss, a court should look to the face of the complaint and decide whether, taking all of the allegations of fact as true and construing them in a light most favorable to the nonmovant, plaintiff's allegations state a legal claim. Markowitz v. Northeast Land Co., 906 F.2d 100, 103 (3d Cir. 1990).  Only the allegations in the complaint, matters of public record, orders, and exhibits attached to the complaint matter, are taken into consideration.  Chester County Intermediate Unit v. Pennsylvania Blue Shield, 896 F.2d 808, 812 (3d Cir. 1990).

B.   Lack of Specificity

First, the State argues that Plaintiff's claims should be dismissed for lack of specificity.  (State's Brief at 10.)  The County (representing O'Donnell in his official capacity),(Docket Item No. 18,) Woshnak, and Longo join in this motion. (Docket Item No. 14.)  Defendants' motion for dismissal for lack of specificity fails because this Court finds Plaintiff has satisfied the liberal standards required by Fed. R. Civ. P. 8, as now discussed.

The United States Supreme Court, in Leatherman v. Tarrent County Narcotics Intelligence, 507 U.S. 163 (1983), held that the

9

pleading standard for § 1983 cases against municipalities should not be heightened but follow the same liberal standards as established in Rule 8(a). The Third Circuit favors applying the <u>Leatherman</u> holding broadly, extending Rule 8(a)'s liberal pleading standard to all § 1983 complaints. <u>Alston v. Parker</u>, 363 F.3d 229, 232 (3d Cir. 2004). Additionally, Rule 8(a) applies to state law claims brought in federal court since that rule involves procedural and not substantive issues. Thus, all of Plaintiff's claims, whether those brought under § 1983 or under the New Jersey Tort Claims Act ("NJTCA"), need only meet Rule 8(a)'s standard of including "a short and plain statement of the claim showing that the pleader is entitled to relief. . . ." Fed. R. Civ. P. 8(a)(2).

The Plaintiff has met that standard in his Complaint. Plaintiff alleges specific instances where each named Defendant violated specific constitutional rights by arresting and prosecuting him without cause. Plaintiff also alleges that the County and City created a policy that bred such illegal police activity. As initial pleadings, these allegations fall within the relaxed standard of Rule 8(a) since they give the Defendants "fair notice of petitioner's claims." <u>Swiekiewicz v. Sorema N.A.</u>, 534 U.S. 506, 514 (2002). Of course, once discovery has progressed the Plaintiff bears the burden of proving those

claims, failure of which can lead to summary judgment pursuant to Rule 56.  Id. at 514.

The State argues that Plaintiff's Complaint is without facts and are merely conclusory in nature, and as a result lack the level of specificity required by the federal rules.  (State's Brief at 11.)  The State cites Darr v. Wolfe, 767 F.2d 79 (3d Cir. 1985), to support the argument that Plaintiff's pleading should be subject to heightened pleading standards.  (Id. at 11.) In that case, decided in 1985, the Third Circuit held that "a civil rights complaint under § 1983 must set forth with factual specificity the conduct of defendants alleged to have harmed the plaintiff."  Id. at 80.  However, the State's reliance on Darr is out of date.  In the wake of Leatherman, supra, the Third Circuit has explicitly reversed this heightened pleading standard articulated in Darr, in favor of adopting Rule 8's typically broad requirements to § 1983 complaints.  Alston, 363 F.3d at 232.

Thus, Plaintiff's claims against all Defendants should not be dismissed for lack of specificity.

C.   Statute of Limitations and State Causes of Action

Next, the City, representing Prado in her official capacity, as well as the State, requests dismissal for failure to state a claim of Counts Ten through Twelve for lack of timeliness. (State Brief at 19.)  Camden  County (Docket Item No. 18),

Woshnak, and Longo seek to join those motions (Docket Item No. 14). The movants are correct that Counts Ten through Twelve, in their present form, are time-barred by the statute of limitations of the New Jersey Tort Claims Act ("NJTCA") and therefore will be dismissed.

The NJTCA stipulates that "[t]he claimant shall be forever barred from recovering against a public entity or public employee if: (a) He failed to file his claim with the public entity within 90 days of accrual of the claim. . . ." N.J.S.A. 59:8-8. In adopting the ninety day period, the NJTCA seeks to balance a plaintiff's interest in recovery with a public entity's interest in carrying out a timely investigation while facts are still fresh. Lutz v. Gloucester Township, 380 A.2d 280, 283 (N.J. Super. Ct. App. Div. 1977). Typically, a cause of action accrues either when the plaintiff initially learned about the harm or when the harm actually occurred. Michaels v. New Jersey, 955 F. Supp. 315, 327 (D.N.J. 1996).

In their present form, Counts Ten through Twelve are time barred since the Plaintiff did not file notice of his claim within ninety days of the accrual of that claim. The Plaintiff alleges that he was falsely arrested on October 30, 2002 (Compl. at ¶33), at which time any cause of action relating to the false imprisonment began to accrue. See Beauchamp v. Amedio, 751 A.2d 1047, 1050 (N.J. 2000) ("Ordinarily a cause of action accrues

12

when any wrongful act or omission resulting in an injury, however slight, for which the law provides a remedy occurs."). The Plaintiff did not file a tort claims notice against the Defendants until January 12, 2004, 347 days after the expiration of the ninety day time limit. (City Brief at 5.) Additionally, the statute of limitations cannot be tolled since the Plaintiff made no such motion within the one-year time frame required by the NJTCA. N.J.S.A. 59:8-9.

The Plaintiff asks this Court to read Counts Ten through Twelve as referring only to malicious prosecution and not to false imprisonment. (Plaintiff's Opposition Brief at 23-26.) Tort claims relating to malicious prosecution begin to accrue only after all court proceedings relating to that prosecution are complete, in which case the Plaintiff's January 12, 2004 notice would be timely. Pisano v. City of Union City, 487 A.2d 1296, 1299 (N.J. Super. Ct. Law Div. 1984). However, Counts Ten through Twelve at best refer only obliquely to both malicious prosecution and false imprisonment, even when read liberally and in the light most favorable to the Plaintiff. (See Count Ten of Compl. ("The allegations contained in all other paragraphs of this complaint are incorporated by reference as if fully set forth in this count.")). Instead, malicious prosecution is specifically pled under Count Nine, while Counts Ten through Twelve respectively have pled intentional infliction of emotional

13

distress, negligent infliction of emotional distress, and negligent failure to properly supervise, train, and discipline. To read a claim for malicious prosecution into Counts Ten through Twelve would be redundant of Count Nine and deprive Counts Ten through Twelve of their distinct and ordinary meaning.  To the extent that Plaintiff is alleging that Counts Ten through Twelve are different elements of damages available for malicious prosecution, the recovery of such damages is properly sought in the vehicle of Count Nine.

Thus, Counts Ten through Twelve should be dismissed against the State, County, City, Kane, Woshnak, Longo, O'Donnell, and Prado, in her official capacity, for failure to state a claim because they are time barred under the NJTCA.

D.   Sovereign Immunity

Third, the State requests dismissal of some or all of Plaintiff's claims under Fed. R. Civ. P. 12(b)(6), arguing it, and Defendant Michael Kane in his official capacity as a state trooper, are protected from suit by the doctrine of sovereign immunity.  Specifically, the State argues that it is immune from all twelve counts, while Michael Kane, in his official capacity, is immune from all § 1983 litigation.  The County, representing Defendant O'Donnell, (Docket Item No. 18), as well as Defendants Woshnak and Longo (Docket Item No. 14), join in this motion.

For the reasons now discussed, the State is immune from all twelve counts, while Kane, in his official capacity, is immune from Counts One through Five.  The remaining Defendants, at this point, are not entitled to the protection of sovereign immunity.

     1.   <u>State of New Jersey</u>

The State correctly argues that under the Eleventh Amendment it is immune from liability for money damages under the NJTCA in federal courts.

The Eleventh Amendment prohibits the naming of a state or state agency as a party in federal court against which money damages are sought unless the state waives its immunity or consents to the suit.  <u>Pennshurst State School & Hosp. v. Halderman</u>, 465 U.S. 89, 99 (1984).  In New Jersey, the State is immune to claims stemming from the New Jersey Tort Claims Act because "[n]o where in the [Tort Claims] Act is there any indication that immunity  provided by the Eleventh Amendment is impaired."  <u>Ritchie v. Cahall</u>, 386 F. Supp. 1207, 1209 (D.N.J. 1974).  Unless the State consents, it cannot face liability under the NJTCA in federal courts.

  In this instance the Plaintiff pleads four counts against the State under the NJTCA, claiming the State, through its negligence, harmed the Plaintiff.  (Compl. at ¶¶201-210.) However, given the State's Eleventh Amendment immunity and lack

of consent these claims cannot be adjudicated in this Court and therefore should be dismissed as against the State.

The Plaintiff argues that the State, by working in conjunction with Camden County and City police, was "transmuted" into a non-state actor, thereby foregoing sovereign immunity. (Plaintiff's Opposition Brief at 20.)  This theory of "transmutation," however, has been dismissed as a non-viable defense to sovereign immunity and should not be considered by the Court.  Simmerman v. Corino, 804 F. Supp. 644, 650 (D.N.J. 1992).  In Simmerman the Plaintiff argued that the State police were transmuted into a non-state agency when involved in local law enforcement and therefore could not qualify for sovereign immunity.  Id. at 650.  The court, in rejecting that argument, explained that sovereign immunity is not a "functional analysis" – a state agency is protected regardless of whom it works with or what type of work it performs.  Id. at 650.  Therefore, New Jersey will not lose its Eleventh Amendment protection by participating in joint police activity with the County and City. Thus, Counts Nine through Twelve, as brought against the State, will be dismissed for failure to state a claim under R.12(b)(6).

     2.   State Trooper Michael Kane

The State also argues that, in his official capacity, State Trooper Michael Kane is protected by sovereign immunity from Plaintiff's claims brought under § 1983.  This Court agrees.

16

The Supreme Court has held that sovereign immunity protects states from liability under § 1983, as well as state agencies and state officials being sued in their official capacity.  Will v. Michigan Dept. of State Police, 491 U.S. 58, 71 (1989).  The Court has reasoned that plaintiffs should not be able to circumvent sovereign immunity by simply suing state officials or agencies, since in either instance the state itself ultimately bears the burden.  Pennshurst State School & Hosp., 465 U.S. at 101.  The Supreme Court has not suggested that state officials enjoy total protection from § 1983 litigation; rather, state officials must be sued as private individuals rather than as agents of the state.  Hafer v. Melo, 502 U.S. 21, 25 (1991).

In Counts One through Five the Plaintiff seeks relief under § 1983 against Kane in his official capacity as a New Jersey State Trooper.  (Compl. at ¶¶157-180.)  However, a state trooper is considered a state official and therefore cannot be sued in his official capacity in federal court.  See Simmerman, 804 F. Supp. at 650 (holding New Jersey State Police are an arm of the state for Eleventh Amendment purposes); N.J.S.A. 53:2-1 ("The members of the State Police shall be subject to the call of the Governor. They shall be peace officers of the State. . . .").  Any liability imposed on Kane, sued in his official capacity, would be borne by the State, effectively circumventing the State's immunity from § 1983 litigation.  Thus, the Plaintiff may

17

not name Kane, in his official capacity, as a defendant in Counts
One through Five, though Kane may still be sued in his individual
capacity.

### 3.   Camden County and Camden Officers

Camden County, as well as Defendants Longo, O'Donnell, and
Woshnak join the State in requesting dismissal of Plaintiff's §
1983 claims, arguing they are protected by the defense of
sovereign immunity.

The Supreme Court has held that local government entities
can be subject to suits under § 1983 in instances where "official
municipal policy of some nature caused a constitutional tort."
Monell v. Dep't of Social Services of City of New York, 436 U.S.
658, 691 (1978).  On the other hand, a local entity will not
incur liability solely because an employee has violated the
constitution; respondeat superior does not apply to local
governments in the context of § 1983 suits.  Id. at 694.
Ultimately, the plaintiff will bear the burden of proving that
the local government's policy and custom caused the
constitutional violations.  Id. at 694-95.

In Count Eight of his Complaint Plaintiff alleges that the
County and City of Camden instituted policies and customs which
led to the violation of his constitutional rights.  (Compl. at
¶¶191-195.)  This Complaint should only be dismissed under Rule
12(b)(6) if "it appears beyond doubt that the plaintiff can prove

18

no set of facts in support of his claim which would entitle him to relief." <u>Scheuer v. Rhodes</u>, <u>supra</u>, 416 U.S. at 236. In this instance, reading the Complaint and facts in Plaintiff's favor, Plaintiff has stated a legal claim which would entitle him to relief under <u>Monell</u>. Therefore, Counts One through Five, as pertaining to the County of Camden, will not be dismissed.

Additionally, Defendants O'Donnell, Woshnak, and Longo, unlike State Trooper Kane, are not inherently protected from suits under § 1983. The Third Circuit has held that local government employees, when sued in their official capacity, are only shielded by sovereign immunity when they are an arm of the state, in which case the employee's liability would burden the state. <u>Carter v. City of Philadelphia</u>, 181 F.3d 339, 347 (3d Cir. 1999). In deciding when a local government employee sufficiently represents the state, the Third Circuit examines three factors: "(1) the source of funding – <u>e.g.</u> whether payment of any judgment would come from the state's treasury, (2) the status of the agency/individual under state law, and (3) the degree of autonomy from state regulation." <u>Id.</u> at 347. The Third Circuit has especially emphasized the first criterion – funding – because one of the primary purposes of the Eleventh Amendment is to prevent states from having to pay out federal court judgments unless it has consented to the federal court's jurisdiction. <u>Id.</u> at 348. Here, Defendants Longo, Woshnak, and

O'Donnell have presented no evidence to suggest they represent the state to such a degree to receive Eleventh Amendment immunity.

Thus, only Defendants Kane, in his official capacity, and the State of New Jersey are entitled to sovereign immunity.

E.   <u>Qualified Immunity</u>

Finally, the State (representing Defendant Kane in his official capacity), joined by the County (representing Defendant O'Donnell in his official capacity), and Defendants Longo and Woshnak, move to dismiss Plaintiff's Complaint, invoking the doctrine of qualified immunity as to all of Plaintiff's claims brought pursuant to 42 U.S.C. § 1983.[3]  Defendants' motion will be granted in part (Counts One and Five) and denied in part (Counts Two through Four).

Qualified immunity, which allows public officials to avoid the burdens of standing trial in § 1983 suits, should be resolved

_____

[3] The Defendants also claim "good faith immunity" under N.J.S.A. 59:3-3 which protects law enforcement officials from lawsuits under the NJTCA when that official "acts in good faith in the execution or enforcement of any law." N.J.S.A. 59:3-3. The standard for good faith immunity is the same as the objective reasonableness of qualified immunity in § 1983 suits. <u>Wildoner v. Borough of Ramsey</u>, 162 N.J. 375 (2000). In this case, Plaintiff's state law claims, Counts Ten through Twelve, have been dismissed for being time barred, and therefore the Court need not address good faith immunity as to those claims. Furthermore, Count Nine, the remaining state law claim of malicious prosecution, will not satisfy the "good faith immunity" standard since there is not sufficient probable cause to create qualified immunity for the Defendants. <u>See</u> discussion <u>infra</u> at p. 25.

as early in the process of litigation as possible.  Saucier v. Katz, 533 U.S. 194, 201 (2001).  Given this emphasis on early disposition, qualified immunity is properly considered as a Rule 12(b)(6) motion to dismiss and, as with all such motions, the Court should read all facts, and inferences therefrom, in Plaintiff's favor.  The privilege of qualified immunity can be overcome when officials violate "clearly established statutory or constitutional rights of which a reasonable person would have known."  Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982).  In Saucier v. Katz, the Supreme Court refined the qualified immunity analysis by introducing a two-part test: (1) was a constitutional right violated, and, if so, (2) was that right clearly established.  533 U.S. at 201.  Thus, in order to analyze qualified immunity, this Court must examine whether any of Plaintiff Martino's constitutional rights were violated and whether, at the time of his arrest, those rights were clearly established.

    1.  False Imprisonment

Allegations of false imprisonment stem from the Fourth Amendment's guarantee of freedom from illegal search and seizures.  A defendant may be protected by qualified immunity from false imprisonment claims by showing probable cause for the arrest, in which case the Fourth Amendment was not violated.  Sharrar v. Felsing, 128 F.3d 810, 828 (3d Cir. 1997).

21

Furthermore, the standard is objective: as long as a reasonable officer, faced with similar circumstances, could believe probable cause to exist, qualified immunity would apply.  <u>Saucier</u>, 533 U.S. at 205.  On the other hand, if the defendant cannot show objective probable cause he or she will not be shielded from § 1983 suits.  The Third Circuit has defined probable cause as when "facts and circumstances within the arresting officer's knowledge are sufficient in themselves to warrant a reasonable person to believe that an offense has been or is being committed by the person to be arrested."  <u>Orsatti v. New Jersey State Police</u>, 71 F.3d 480, 482-83 (3d Cir. 1995).  Neither the actual committal of the crime nor a subsequent dismissal of the charges should influence an analysis of probable cause.  <u>Johnson v. Campbell</u>, 322 F.3d 199, 211 (3d Cir. 2003).  Defendants only need to show that there was objective probable cause to arrest and imprison the Plaintiff.

In the instant case, Plaintiff is claiming false imprisonment for the time spent in detention between his arrest at the corners of Mickle Boulevard and Haddon Avenue and the issuance of an arrest warrant by Defendant Longo that same night. (Compl. at ¶160.)  According to the facts as presented by Plaintiff, his arrest could have been predicated on three alleged legal violations: (1) violating various traffic laws, (2) eluding police after having received a signal to bring vehicle to a full

22

stop (N.J.S.A. 2C:29-2b) and (3) unlawfully wandering or prowling for the purposes of obtaining controlled dangerous substances (N.J.S.A. 2C:33-2.1).  (Id. at ¶¶103, 105.)  In accepting the facts in a light most favorable to Plaintiff, Defendants have shown that a reasonable officer in their circumstances could have believed he had probable cause to arrest Plaintiff for the traffic violations, and, therefore, they are protected by qualified immunity from Count One.

In Atwater v. City of Lago Vista, 532 U.S. 318 (2001), the Supreme Court held that the Fourth Amendment does not "forbid a warrantless arrest for a minor criminal offense, such as a misdemeanor seatbelt violation punishable only by a fine."  Id. at 318.  The Court, in examining early American common law, found that the Framers did not consider warrantless arrests for misdemeanors within the scope of illegal search and seizures prohibited by the Fourth Amendment.  Id.  Additionally, the Court reasoned that prohibiting warrantless arrests for misdemeanors would burden and interfere with police work since there often is a thin line between a jailable and fineable offense.  Id. at 348-49 ("[I]s the weight of the marijuana a gram above or a gram below the fine-only line?").  Police officers cannot make such split-second distinctions 100% accurately, and so should be shielded from liability when making a reasonable error.  Id. at

348.  Thus, an official may make an arrest for misdemeanors without violating the Fourth Amendment.

Plaintiff Martino concedes he violated traffic laws.  In paragraph forty-one of his Complaint, Plaintiff states he did commit traffic violations, but claims he did so with just cause and necessity.  (Compl. at ¶41.)  Furthermore, in paragraph 106 Plaintiff denies some of the traffic violations, but not all of them, making no mention of the summons for driving the wrong way on a one-way street or careless driving.  (Id. at ¶106.)  Based on Plaintiff's Complaint it can be assumed that he did commit some traffic violations in the presence of Defendants, in which case his arrest did not violate the Fourth Amendment.  Since there was no constitutional violation for arresting Martino, the first prong of the Saucier analysis ("was there a constitutional violation?") protects the Defendants from facing liability for the arrest and detention of Martino up to the issuance of his warrant.  Thus, Count One should be dismissed as pertaining to Defendants Kane, Woshnak, Longo, and O'Donnell.

2.   Malicious prosecution

Count Two of Plaintiff's Complaint alleges that Defendants maliciously prosecuted him based on charges of eluding the police and loitering for controlled substances, thereby violating the Fourth Amendment.  (Id. at ¶¶162-66.)  In accepting Plaintiff's allegations, the Defendants will not receive qualified immunity

24

at this stage in the litigation process, because a reasonable officer aware of these circumstances could not have believed that prosecution of Plaintiff for unlawfully prowling for purpose of obtaining CDS or for eluding police officers was based upon probable cause, as explained below.

In order to have a cause of action for malicious prosecution a plaintiff must show that he was deprived of liberty to such a degree that it constitutes a seizure under the Fourth Amendment. Torres v. McLaughlin, 163 F.3d 169, 175 (3d Cir. 1998). Additionally, the plaintiff will have to overcome an official's qualified immunity by showing an absence of any objective probable cause to initiate criminal proceedings against him or her. Brockington v. City of Philadelphia, 354 F. Supp. 2d 563, 569 (E.D.Pa. 2005). If there was sufficient probable cause to arrest the plaintiff for the crimes charged, it can be assumed that the official acted reasonably when initiating prosecution for those alleged crimes, allowing the officer to claim qualified immunity. Montgomery v. De Simone, 159 F.3d 120, 124 (3d Cir. 1998). However, if there was no probable cause to arrest the plaintiff on those charges the officials can face liability for malicious prosecution. In order to determine whether Defendants acted reasonably in prosecuting Martino the Court must examine both charges leading to his imprisonment.

a.   Unlawfully prowling and wandering for the
purposes of obtaining CDS

Section 33-2.1(b) of the New Jersey Code of Criminal Justice
defines unlawful prowling for the purpose of obtaining controlled
substances:

> (1) [if] he wanders, remains or prowls in a public
> place with the purpose of unlawfully obtaining or
> distributing a controlled dangerous substance...and (2)
> engages in conduct that, under the circumstances,
> manifests a purpose to obtain or distribute a
> controlled dangerous substance....

N.J.S.A. 2C:33-2.1(b).  Section 33-2.1 gives non-exhaustive
examples of behavior that may be consistent with someone
attempting to buy drugs.  Each example includes some form of
contact with other people or motorists, including passing objects
or beckoning to pedestrians.  N.J.S.A 2C:33-2.1(c).[4] As
mentioned, this is a non-exhaustive list, but it suggests that
more than just driving from block to block is required to create
probable cause; mere loitering does not satisfy 33-2.1 since New
Jersey has no general anti-loitering laws.  See  State v.
Crawley, 447 A.2d 565, 567-69 (N.J. 1982) ("[W]e know that the

---

[4]"Conduct that may, where warranted under the circumstances,
be deemed adequate to manifest a purpose to obtain or distribute
a controlled dangerous substance...includes but is not limited to
conduct such as the following: (1) repeatedly beckoning to or
stopping pedestrians or motorists in a public place; (2)
repeatedly passing objects to or receiving objects from
pedestrians or motorists in a public place; (3) repeatedly
circling in a public place in a motor vehicle and on one or more
occasions passing any object to or receiving any object from a
person in a public place." N.J.S.A. 2C:33-2.1(c).

Legislature made a conscious decision to exclude a general loitering provision from the Code . . . . In view of this legislative history, we conclude that the absence of a loitering proscription from the Code reflects a state policy to decriminalize such activity."). A police officer cannot arrest an individual unless that individual's behavior is corroborative of some illegal activity, which, as mentioned above, does not include general loitering.

According to Plaintiff's version of events, he did not exhibit behavior consistent with someone prowling for the purpose of purchasing narcotics.  He neither conversed with nor exchanged any items with bystanders, nor attempted to do so.  (Compl. at ¶¶49-50.)  Plaintiff claims that he was lost in Camden on the night of the arrest and that he merely drove from block to block, looking for his way back to the highway.  (Id.)  The State does not offer any other behavior on the part of the Plaintiff, other than driving at night in a high-crime neighborhood known for drug dealing, to suggest that his prowling or wandering was for the purpose of purchasing controlled substances.  (State's Brief 16-17.)  At best, Plaintiff's behavior could be described as loitering, which a reasonable police officer cannot consider, absent any other evidence, a reasonable basis for arresting an individual under § 33-2.1.  Therefore, the Defendants will not

have qualified immunity for Plaintiff's prosecution based on prowling for the purpose of obtaining controlled substances.

### b.   Eluding police officers

Plaintiff Martino was also charged with eluding officers under § 29-2b of the New Jersey Code of Criminal Justice, (Compl. at ¶103,) which provides:

> Any person, while operating a motor vehicle on any street...who knowingly flees or attempts to elude any police or law enforcement officer after having received any signal from such officer to bring the vehicle...to a full stop commits a crime of the third degree.

N.J.S.A. 2C:29-2b.   In order to be found guilty for eluding an officer the escapee must have known he was being asked to stop by police officers.  State v. Fuqua, 696 A.2d 44, 46 (N.J. Super. Ct. Law Div. 1997).  However, the issue at hand is not whether Plaintiff Martino was actually guilty of eluding arrest, but whether the Defendants had probable cause to believe he was eluding arrest.  Mantz v. Chain, 239 F. Supp. 2d 486, 498 (D.N.J. 2002).  The answer to this question depends on which factual account the Court accepts.  The State, in its Answer, claims that Plaintiff Martino ignored a signal from police officers to stop and instead led the officers on a chase. (State's Brief at 17.)  On the other hand, Plaintiff Martino claims that at no time prior to his arrest did the police officers identify themselves, and so he had no way of knowing the unmarked cars chasing him were police officers.  (Compl. at ¶82.)

28

Were it established that the Defendants identified themselves, it would be reasonable for them to believe Plaintiff Martino was eluding their order to stop.  However, this is a factual dispute with Plaintiff's version of events, and as such, must be resolved by the trier of facts to determine whose version is more credible.  Mantz, 239 F. Supp. 2d at 496.

In the meantime, accepting Plaintiff's version, as required by Rule 12(b)(6), the police officers lacked objective probable cause to arrest Plaintiff Martino for eluding officers.  Without any indication to a suspect that he or she is being stopped by police, it would be unreasonable to arrest that person for eluding law enforcement officials.  New Jersey courts have emphasized that motorists must pull over after receiving any signal by law enforcement officials to stop.  State v. Seymour, 289 N.J. Super 80, 87 (1996).  However, it would be unreasonable to expect drivers to stop with no signal merely upon the anonymous pursuit by an unmarked vehicle.  Police officials, without identifying themselves in any way, should reasonably expect people to flee, especially when lost in a dangerous neighborhood at night.  See United States v. Carter, 1999 WL 1007044, at *7, n.18 (Oct. 22, 1999)("Were the car not recognizable as a police car, it would not be objectively suspicious for an individual confronted by an unknown vehicle rolling slowly toward him late at night with its lights out to

29

stop and quickly turn around to look for an escape route. . . .") .  Thus, in accepting Plaintiff's factual allegations, this Court will not grant qualified immunity to Defendants for their prosecution of Plaintiff for eluding police.

The State argues that Plaintiff Martino committed traffic violations which established probable cause necessary to stop, search, and arrest Plaintiff. (State's Brief at 17).  As discussed, arrests for traffic violations do not violate the Fourth Amendment.  However, Plaintiff Martino was not charged and jailed for traffic violations, but for eluding police officers and loitering to obtain controlled substances.  (Compl. at ¶103.) A malicious prosecution analysis will depend on those charges leading to Plaintiff's deprivation of liberty and not to what lead to his initial arrest.  Therefore, Plaintiff's alleged traffic violations do not constitute probable cause for his imprisonment.  Defendants' motion to dismiss the malicious prosecution claims on the basis of qualified immunity will be denied.

> 3.   <u>Invasion of bodily privacy, and unreasonable</u>
>       <u>search</u>

In Counts Three and Four, Plaintiff also alleges his Fourth Amendment rights were violated when he was strip searched and had blood drawn.  (Compl. at ¶¶167-176.)  Defendants claim to be shielded by qualified immunity since they had an objectively

reasonably basis for arresting Plaintiff Martino.[5]  (State's
Answer at 12.)  Nonetheless, based on Plaintiff's Complaint there
was no reasonable basis for subjecting him to strip searches.
Therefore, Defendants will not receive qualified immunity from
Counts Three and Four.

In <u>Bell v. Wolfish</u>, 441 U.S. 520 (1979), the Supreme Court
held that invasive body searches of pre-sentence detainees do not
violate the Fourth Amendment as long as the searches are related
to a legitimate goal or interest.  <u>Id.</u> at 538.  In applying <u>Bell</u>
to strip searches, federal courts have repeatedly held that
warrantless strip searches of detainees are only constitutional
when there exists a reasonable suspicion that the arrestee
possesses drugs or weapons.[6]  <u>Davis v. City of Camden</u>, 657 F.
Supp. 396, 401 (D.N.J. 1987).  Absent such suspicion, police may
not perform a strip search.  For example, persons detained or
arrested for minor offenses, such as traffic violations, cannot

---

[5]None of the Defendants' Answers directly address Counts
Three and Four (illegal searches).  Rather, the State, in its
Answer (which the County, Longo, and Woshnak join), claims
qualified immunity for all § 1983 claims because there was
probable cause for arresting Martino, but makes no justifications
for strip searching him.

[6] New Jersey statute prohibits strip searches of detainees
<u>not charged with a crime</u> (i.e. minor violations) unless (1) the
person consents, (2) a warrant authorizing the search has been
issued, or (3) the search is based on reasonable suspicion that a
weapon or drugs will be found and the person is in detention.
N.J.S.A. § 2A:161A-1.  This statute is inapplicable to the
present case since Plaintiff Martino was charged with two crimes
(prowling to obtain controlled substances and eluding police).

be strip searched unless other circumstances lead police to suspect possession of weapons or drugs.  See Davis v. City of Camden, 657 F. Supp. at 401 (holding municipal policy of subjecting all detainees to strip searches as unconstitutional); Wilkes v. Borough of Clayton, 696 F. Supp. 144, 149 (D.N.J. 1988) (holding unconstitutional policy of watching all detainees use bathroom).

Martino claims that he was strip searched on two separate occasions:  first, while he was detained at the Camden Police Administration Building, and again, after he had been transferred to the Camden County Jail.  (Compl. at ¶¶110, 112.)  Typically, these searches could reasonably be justified based on the issuance of an arrest warrant for charges involving controlled substances.  See Davis v. City of Camden, 657 F. Supp.  at 400 (arguing the nature of the crime charged could provided basis for reasonable strip search).  However, where, as here, the arrest warrant was allegedly issued with no probable cause, a strip search could not be justified on the grounds of that arrest warrant.  Plaintiff's complaint suggests a lack of probable cause for police to suspect and arrest him for prowling for the purposes of obtaining controlled substances.  Since the police were not initially justified to arrest Martino for prowling to purchase drugs, it would be illogical to recognize a reasonable basis for searching him for drugs while in detention.  The

32

Defendants witnessed nothing that satisfies the typical standard
of reasonable suspicion necessary to conduct strip searches.
Compare United States v. Cofield, 391 F.3d 334 (1st Cir. 2004)
(finding reasonable suspicion where known drug-dealer had history
of concealing weapons in underwear and had heroin in exterior
pocket); Elk v. Towson, 839 F. Supp. 1047 (S.D.N.Y. 1993)
(finding reasonable suspicion after police saw and smelled
marijuana on defendant).  Therefore, Counts Three and Four cannot
be dismissed for failure to state a claim based on Defendants'
qualified immunity since, in reading facts most favorably for
Plaintiff, the Defendants conducted strip searches without the
necessary reasonable suspicion, and these Defendants have
proffered no circumstances under which a reasonable officer could
have believed that a strip search of Mr. Martino would be lawful.

### 4.  Equal Protection

Finally, Plaintiff alleges that Defendants engaged in racial
profiling when they "noticed, followed, pursued, and arrested"
him in part because of his race.  (Compl. at ¶¶177-180.)  In this
instance, the question of racial profiling must be dismissed
since Plaintiff Martino is not a member of a protected class.

Officers are protected by qualified immunity "insofar as
their conduct does not violate clearly established statutory or
constitutional rights of which a reasonable person would have
known."  Harlow v. Fitzgerald, supra, 457 U.S. at 818.  In the

context of race, the Fourteenth Amendment's equal protection clause is violated when a plaintiff demonstrates that an official's actions were (1) discriminatory in effect and (2) motivated by discriminatory purposes.  <u>Bradley v. United States</u>, 299 F.3d 197, 205-06 (3d Cir. 2002).  In order to claim discriminatory effect the plaintiff must show that he was member of a protected class and that he was treated differently from similarly situated individuals in an unprotected class.  <u>Id.</u> at 206.

In this instance Plaintiff Martino, as a Caucasian male, is not a member of a protected class and therefore cannot prove his 14th Amendment guarantee to equal protection was violated.  Since there was no established constitutional right violated the Defendants cannot be liable under § 1983.  Therefore, Count Five will be dismissed as brought against Defendants Kane, O'Donnell, Woshnak, and Longo for failure to state a claim pursuant to Rule 12(b)(6).

V.   <u>Conclusion</u>

For the reasons expressed above, the motions of the individual Defendants to join in the City of Camden's and State of New Jersey's motions will be granted and the State of New Jersey and City of Camden's motions will be granted in part and denied in part.  In conclusion, Counts One and Five will be dismissed as against Defendants Kane, O'Donnell, Woshnak, and

Longo; Counts Ten through Twelve are dismissed as against

Defendants the State, County, City, Kane, Longo, Woshnak,

O'Donnell, and Prado in her official capacity; Counts Two, Three,

and Four are dismissed only as to Defendant Kane in his official

capacity; and Count Nine is dismissed as against Defendants the

State and Kane, in his official capacity.  The accompanying Order

is entered.


**July 26, 2005**                         **s/ Jerome B. Simandle**
Date                                      JEROME B. SIMANDLE
                                          United States District Judge


35